IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEIKO EPSON CORPORATION and EPSON AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> J&R MEGA STORE, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 22-cv-10860-RWZ |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTIVE RELIEF
(with Memorandum of Law Incorporated)**

Pursuant to Federal Rule of Civil Procedure 55(b), plaintiffs Seiko Epson Corporation and Epson America, Inc. ("Epson" or "Plaintiffs") hereby move for default judgment against defendant J&R Mega Store ("J&R Mega" or "Defendant") due to its failure to timely respond to Epson's complaint.  By virtue of their default, Defendant has admitted the factual allegations in the complaint and these allegations must be taken as true.  *See* Fed. R. Civ. P. 8(b)(6).[1]  In support of this request, Epson states as follows:

**INTRODUCTION**

This is an unfair competition, false advertising, and counterfeiting case involving Epson products.  As explained in great detail within Epson's pleadings, J&R Mega advertises and sells various Epson products on the Internet via websites such as Amazon.com (hereinafter, the "Websites").  On the Websites, J&R Mega advertises that the Epson products it sells are "new."

---

[1] "Effect of Failing to Deny.  An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."

1

However, rather than receiving new Epson products as advertised, customers receive used, refurbished, and/or counterfeit Epson product. J&R Mega's misconduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of Epson and the public. Accordingly, this motion seeks permanent injunctive relief in the form of a default judgment enjoining J&R Mega's ongoing false advertising, unfair competition, and unfair and deceptive business practices as well as statutory damages related to J&R Mega's willful counterfeiting.

## STATEMENT OF FACTS

### a. Epson's Commitment to its Customers

Epson is recognized throughout the world and the United States as a leading manufacturer of consumer and business electronics products. Complaint, ¶ 13. As a market leader, Epson continues to set standards for image quality, performance, and innovation with its ever-evolving product line. Id. at ¶ 14. Epson's commitment to delivering quality products is recognized by the industry through various product awards and industry recognition. Id. Epson's customer service and support is industry-leading. Id. at ¶ 15. For example, Epson offers its projectors with a two-year standard limited warranty, including Epson's Road Service, which provides a replacement projector with next day delivery and free shipping. Id.

### b. Epson's Trademarks

Seiko Epson Corporation is the owner of a variety of trademarks including, but not limited to, **EPSON EXCEED YOUR VISION** ® (Reg, No. 3,448,351), and EPSON® (Reg. No. 3,092,025), among others (the "Trademarks"). Id. at ¶ 20. The Trademarks are world famous and distinguish Epson Products. Id. at ¶ 21. The Trademarks are valid, subsisting, in full force and effect, have been registered for more than five years and are incontestable as provided by Section 1065 of the

Lanham Act. Id. at ¶ 22. Each year Epson spends significant amounts to develop and maintain the considerable goodwill they enjoy in the Trademarks and in their reputation for high quality. Id. at ¶ 23.

### c. Defendant's Unfair and Deceptive Conduct[2]

J&R Mega is a direct competitor of Epson in the consumer electronics product market. J&R Mega has advertised and offered for sale, and is currently advertising and offering for sale, Epson products through its Amazon Seller Account "J&R Mega Store." At the time of the filing of this lawsuit, it listed over 74 Epson products available for resale on its Amazon page alone. Defendant advertises that the Epson products it sells are in "new" condition. In fact, the Epson products Defendant advertises and sells are not "new," but are rather used and/or refurbished. Epson has completed test buys of Epson products advertised and sold by Defendant, which confirmed that it is selling refurbished Epson products advertised as being in "new" condition. As follows is an exemplar advertisement from J&R Mega Store on Amazon.com:



---

[2] The following facts are found in ¶¶ 23-32 of the Complaint.

Consumers who purchase this product do not receive a new Epson projector. Instead, they receive a refurbished Epson projector.

On or about April 1, 2022, Epson purchased an Epson projector from J&R Mega Store. A visual inspection of the product received confirmed that it was a refurbished product rather than a "new" product as advertised by J&R Mega. Indeed, consumer reviews on Amazon.com confirm that it is Defendant's usual business practice to sell refurbished products as "new:"





**d.     Defendant's Counterfeiting[3]**

Epson's recent investigation reveals that Defendant is engaged in a far more deceptive scheme as well. As shown in the below picture, Epson clearly marks its refurbished products on the outside of the product's box:

---

[3] The following facts are found in ¶¶ 33-40 of the Complaint.



Epson's investigation revealed that the Defendant is purchasing refurbished Epson products, cutting off the words "Epson Refurbished Product" from the packaging, covering the scar on the box with a counterfeit "Epson" label, and then selling the product as a "new" Epson Product to unsuspecting customers. As follows is a picture of the counterfeit "Epson" label used by Defendant:



As a result, not only is Defendant deceiving customers by selling them refurbished Epson products as "new" product, it is placing a spurious "Epson" mark upon the product. Based upon the above, Defendant is selling counterfeit Epson products.

During a follow-up investigation of the Defendant, it was learned that Defendant was also removing Epson products from Epson's packaging - which clearly marks the products as being refurbished - and re-boxing the Epson product in its own new box lacking the information that the Epson product is refurbished. Accordingly, Defendant is going to great lengths to deliberately hide the fact that it is selling refurbished Epson product as "new" Epson product.

### e. The Harm Caused By Defendant[4]

Consumers expect that the Epson products they purchase from Defendant will be "new" products as advertised. Instead, they receive counterfeit, refurbished Epson products. Purchasers of Epson products from Defendant are likely to be, and have actually been, misled and deceived by Defendant's infringement and literally false product listings and advertisements.

Consumers expect Defendant's advertisements for the Epson products it sells to be accurate, and base their purchasing decisions in large part on those representations. That is, consumers pay a relatively higher price for an Epson product purchased from Defendant because they want to purchase a new product, not a refurbished / counterfeit product. Consumers who purchase Epson products from Defendant believing them to be "new" are misled and confused when they instead receive refurbished / counterfeit products. After having a poor experience with a refurbished / counterfeit Epson product purchased from Defendant (which the consumer reasonably believed was new), the consumer is less likely to purchase another "new" Epson

---

[4] The following facts are found in ¶¶ 41-57 of the Complaint.

product in the future. Consumers who purchase Epson products from Defendant believing them to be new, and not knowing that they are actually refurbished / counterfeit, blame Epson for the confusion as to the condition of the product.

Defendant's misconduct is damaging to Epson's reputation and goodwill, and is damaging to the consuming public. By advertising the refurbished / counterfeit Epson products it sells as "new," Defendant is intentionally attempting to entice consumers to purchase Epson products from Defendant instead of purchasing new products from Epson. The natural, probable, and foreseeable result of Defendant's wrongful conduct described above has been to cause confusion, deception, and mistake in the market, to deprive Epson of business and to tarnish its goodwill, to injure Epson's relationship with existing and prospective customers, and to divert sales of Epson products. Therefore, Defendant's continued infringement and false advertisement of Epson products has harmed and continues to harm Epson, its consumers, and Epson's relationship with consumers.

Epson contacted J&R Mega Store multiple times since July of 2017 regarding its sale of refurbished Epson products as "new." Therefore, Defendant is fully aware that its sale of refurbished Epson products as "new" constitutes false advertising and unfair competition. Despite being warned by Epson, Defendant has continued to offer for sale and sell refurbished / counterfeit Epson Products as "new." Defendant's infringement and false advertisement of Epson products to consumers results in actual and irreparable harm to Epson and consumers. Defendant's actions substantially harm Epson and its consumers, who ultimately purchase Epson products from Defendant reasonably believing them to be new, genuine, quality Epson products. As a result of Defendant's actions, Epson is suffering a loss of the enormous goodwill it has created in the Trademarks. Epson is also suffering ongoing actual damages in the form of lost sales. Defendant

is likely to continue the acts complained of herein, and unless restrained and enjoined, will continue to do so, causing Epson and consumers irreparable harm.

      **f.**      **Defendant's Default**

True and accurate copies of the Complaint and Summons were served upon Defendant on June 13, 2022, as indicated by the return of service filed with the Court. See ECF No. 7; Nickerson Aff. at ¶ 4. As such, Defendant was required to file a response to Epson's Complaint on or before July 5, 2022. Nickerson Aff. at ¶ 5. To date, Defendant has not answered or otherwise moved with respect to the Complaint, and the time for Defendant to answer or otherwise move with respect to the Complaint has expired. Nickerson Aff. at ¶ 6. Given its failure to appear in this case, the Clerk of the Court properly entered a Default on July 6, 2022. ECF No. 9; Nickerson Aff. at ¶ 8.

Upon information and belief, Defendant is an online storefront and is not an infant or incompetent person or in the military service of the United States. Nickerson Affidavit, ¶ 9. A proposed order is being filed contemporaneously with this motion in accordance with the Court's standing order.

## ARGUMENT

**I.**     **EPSON IS ENTITLED TO A DEFAULT JUDGMENT**

Epson has met the prerequisites for a default judgment. Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. First, the clerk must enter a default when "a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

Second, upon obtaining a clerk's notation of default, a plaintiff must apply to the court for a default judgment where, as here, the plaintiff's claim is not for a "sum certain." *Sec. & Exch. Comm'n v. Tropikgadget FZE*, 146 F. Supp. 3d 270, 274-75 (D. Mass. 2015) (*quoting* Fed. R. Civ. P. 55(b)). On a motion for default judgment, the court may "examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002). In determining whether to enter a default judgment, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6); *Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002); *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability."); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985) ("There is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its . . . claims must be considered established as a matter of law."). Epson has shown that Defendant is liable for trademark infringement as explained below.

## II. EPSON HAS SET FORTH VALID CLAIMS

The complaint establishes valid claims for trademark infringement under 15 U.S.C. § 1114 and 15 U.S.C. § 1125. The Lanham Act is grounded in two central policy concerns. *See Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 636 (1st Cir. 1992). First, the Lanham Act focuses on protecting consumers from confusion: "Every product is composed of a bundle of special characteristics. The consumer who purchases what he believes is the same

product expects to receive those special characteristics." *Id*. Second, the Act protects "the trademark owner's goodwill." *Id*.

To prevail on its trademark infringement claim, Epson must prove two elements: "1) the trademarks are 'entitled to trademark protection,' and 2) 'the allegedly infringing use is likely to cause consumer confusion.'" *Bose Corp. v. Ejaz*, 732 F.3d 17, 26 (1st Cir. 2013) (*quoting Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008)); *see also Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir. 1993); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 28 (1st Cir. 1989). Epson easily satisfies both elements.

As set forth in its complaint, Epson has established that it is the owner of all right, title, and interest in and to the Trademarks. See Nickerson Decl. at ¶ 5, Ex. A; Complaint at ¶¶ 20-21. The U.S. Patent and Trademark Office issued registrations for the **EPSON EXCEED YOUR VISION** ® (Reg, No. 3,448,351), and EPSON® (Reg. No. 3,092,025) marks. *Id*. Epson's certificates of registration for the Trademarks from the USPTO are *prima facie* evidence of the validity of the Trademarks, its ownership of the marks, and its exclusive right to use the marks in commerce or in connection with the goods or services specified in the certificates. 15 U.S.C. § 1057(b); *United States Patent & Trademark Office v. Booking.com B. V.*, 140 S. Ct. 2298, 2302 (2020) ("The owner of a mark on the principal register enjoys valuable benefits, including a presumption that the mark is valid."); *Bose Corp.*, 732 F.3d at 26 ("Registration serves as prima facie evidence that the trademarks are entitled to protection"); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986) (noting that "[a]s holders of numerous federally registered trademarks [plaintiff is] entitled to a strong presumption of [its] marks' validity and of ownership"). In light of the presumption given to Epson's federally registered marks combined

11

with Defendants' default, there is little doubt that Epson has satisfied the first element of demonstrating ownership of two valid marks entitled to the protection of the law.

As to the second element of whether the conduct is likely to cause confusion, courts in the First Circuit follow the test for consumer confusion set forth in *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, which involves analyzing the following factors:

> the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark.

657 F.2d 482, 487 (1st Cir. 1981) (citations omitted). Here, the Epson products Defendant offers for sale and sells bear the actual Trademarks, are advertised to be genuine, new Epson products protected by Epson's manufacturer's warranty, are advertised and sold online (making the channels of trade and advertising mechanisms identical), and are sold to the same prospective consumers. The allegations in Epson's Complaint easily satisfy the "likelihood of confusion" test set forth in *Polaroid. See Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 312 (S.D.N.Y. 2007) (noting the limited relevance of the balancing factors in gray market and counterfeit cases because "the trademark at issue is always plaintiff's actual mark" and is placed on a product that is "*almost* the same").

Indeed, given the dual purposes of trademark law both to ensure customers get the products they intend to receive and to allow a trademark holder the ability to shape the contours of its reputation, it is clear that Defendant's conduct undermines these two goals. Defendant's conduct as alleged in the complaint is a clear case of exactly the misconduct the First Circuit teaches the Lanham Act is intended to prohibit. *Nestle*, 982 F.2d at 639 ("the [Lanham Act] aims to eradicate deceit and minimize consumer confusion."). As set forth in the Complaint and shown above, it is

alleged that Defendant is selling used, refurbished or counterfeit Epson products as "new" to unsuspecting customers. The First Circuit and courts in this district have had little trouble deeming this conduct as infringing upon trademark law. See *Nestle*, 982 F.2d at 641-43; *Montblanc–Simplo GmbH v. Staples, Inc.*, 172 F. Supp. 2d 231, 236 (D. Mass. 2001), *Heraeus Kulzer LLC v. Omni Dental Supply*, 2013 WL 3305284, at *3 (D. Mass. July 1, 2013); see also, *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009) (granting preliminary injunction due to material differences in quality control of the product). Epson has not only shown that confusion is likely (which is all that is required), it has shown that confusion is inevitable and will continue to occur absent swift injunctive relief (as discussed in more detail below). Given that "[w]hen a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability," Epson has alleged facts sufficient to show that its complaint set forth facts that plausibly set forth a basis for liability for its trademark infringement under 15 U.S.C. §§ 1114, 1125.

### III. THIS COURT SHOULD PERMANENTLY ENJOIN DEFENDANT FROM FUTURE INFRINGEMENT OF EPSON'S TRADEMARKS

Pursuant to 15 U.S.C. § 1116, Epson is entitled to a permanent injunction to prevent any future trademark infringement by Defendant. Under the Lanham Act, a court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right [of a trademark holder]." 15 U.S.C. § 1116(a). An injunction is the "usual and standard" remedy in Lanham Act cases. *See* 5 J. Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th ed. 2006). Courts routinely grant injunctive relief through default judgments. *See, e.g., United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 88 (2d Cir. 1997) (affirming default judgment in action

to enjoin the use of plaintiff's registered service mark); *Gucci Am. Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (ordering permanent injunction after default judgment).

In order to obtain a permanent injunction, Epson must demonstrate: (1) actual success on the merits; and (2) irreparable harm. *Gucci Am. Inc.*, 678 F. Supp. 2d at 120. In this case, "plaintiffs have established success on the merits because the defendants' default constitutes an admission of liability." *Id*. As to the second prong, a showing of irreparable harm requires "an actual, viable, presently existing threat of serious harm" that cannot adequately be remedied through money damages alone. *Bio-Imaging Techs., Inc. v. Marchant*, 584 F. Supp. 2d 322, 330 (D. Mass. 2008).

In the First Circuit, "irreparable harm flows from an unlawful trademark infringement *as a matter of law*." *Nestle*, 982 F.2d at 640 (emphasis supplied). "By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot be adequately compensated." *Id.* Because Epson has clearly demonstrated that Defendant has engaged in unlawful trademark infringement, irreparable harm is presumed. *Id.* If that were not enough, the allegations in the Complaint (taken as true here) prove that Defendant's misconduct is causing irreparable harm to consumers as well as to Epson as consumer deception gives rise to a finding of irreparable harm. *See, e.g., Spruce Envt'l. Techs., Inc. v . Festa Radon Techs., Co.*, No. 15-11521-NMG, 2015 WL 4038802, at *5 (D. Mass. July 2, 2015) (allegations that deceptive advertising could potentially affect the purchasing decisions of consumers were sufficient to satisfy irreparable harm element).

Here, there is no question that consumers are likely to be confused by the misconduct of Defendant. Indeed, as discussed above, Defendant is selling used, refurbished, or counterfeit

Epson products to unsuspecting customers as "new" Epson products. Indeed, customer feedback from just this past week makes clear that Defendant's misconduct is ongoing and causing harm[5]:

> ★☆☆☆☆ "Several issues with the order, but due to an immediate client installation, I was not able to request a refund. The item ordered, an Epson 475Wi projector was described as new, and included a mount. The item that I received was not in original packaging, and was a different model, the Epson 695Wi projector, which was not sent with a mount. The projector seemed to be either used or refurbished."
> Read less
> By Kenneth P. on July 9, 2022.

Not only do customers often unknowingly receive products that are not what they intended to buy, but Epson's reputation in the eyes of consumers is not only out of its own hands (which is alone actionable), but it is likely to be negatively impacted by Defendant's misconduct. One need not engage in any mental gymnastics to understand that a customer who has a negative experience with a Epson product sold by Defendant is not likely to think highly of Epson and its brand. This kind of reputational harm is truly irreparable.

Accordingly, Plaintiff requests that the Court enter a permanent injunction enjoining Defendant and its officers, agents, employees, servants, successors and assigns, and all other persons in active concert or participation with them from:

    a. selling, advertising or taking any steps to sell or advertise, any Epson products utilizing the Trademarks;

    b. acquiring, or taking any steps to acquire, any Epson products;

    c. engaging in any activity constituting unfair competition with Epson; and

---

[5] *See* https://www.amazon.com/sp?ie=UTF8&seller=A2Y71A1PRHUH5V (last accessed July 12, 2022)

    d. disposing, destroying, altering, moving, concealing, tampering with or in any manner secreting any business records (including electronic records), of any kind, including invoices, correspondence, sales records, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, purchase, sale or offer for sale, or distribution of any goods bearing the Trademarks or any colorable imitation or confusingly similar variation thereof.

### IV. PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES FOR DEFENDANT'S WILLFUL TRADEMARK INFRINGEMENT

The Lanham Act authorizes an award of statutory damages in lieu of actual damages. By virtue of its default, Defendant's infringement is deemed willful, and therefore the Court has discretion to award anywhere between $1,000 and $2,000,000 per counterfeit[6] mark per type of good sold. 15 U.S.C. § 1117(c); *see, e.g., All-Star Marketing Group, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 620-22 (S.D.N.Y. 2011). Statutory damages are especially appropriate in default judgment cases due to the defendant's nondisclosure. *See, e.g., Coach, Inc. v. Melendez*, No. 10 Civ. 6178, 2011 WL 4542971 at * 7 (S.D.N.Y. Sept. 2, 2011) (noting that the "lack of information regarding defendants' sales and profits make statutory damages particularly appropriate for these kinds of default cases"). The amount of statutory damages does not depend upon actual damages. Statutory damages are made available to plaintiffs for the "deterrent effect

---

[6] Epson has alleged that Defendant engaged in trademark counterfeiting by its creation and use of fake "Epson" product labels place on the Epson products. See, Compl. ¶¶ 33-40. *See Nestle*, 982 F.2d at 638 (a difference in trademarked goods "may well turn an otherwise 'genuine' product into a 'counterfeit' one. . . because a difference in products bearing the same name confuses consumers and impinges on the . . . trademark holder's goodwill."); *Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 385 (E.D.N.Y. 2008) (determining the product to be counterfeit based on differences in packaging such as the lack of an expiration date and batch code).

on defendants and others, and the defendants' failure to produce records from which more traditional damages could be computed." *Rodgers v. Anderson,* No. 04-cv-1149, 2005 WL 950021, at * 2 (S.D.N.Y. April 26, 2005).

Given that the parties have conducted no discovery due to Defendant's default and that the limited information shows that Defendant had over 74 Epson product listings available on Amazon.com alone[7], Epson seeks damages in the amount of $1,000,000 per mark (out of a maximum allowable $2,000,000 per mark) for a total award of $2,000,000 (out of a maximum allowable $4,000,000). *See* 15 U.S.C. § 1117(c). While the statute allows Epson to seek up to $2,000,000 in statutory damages from Defendant for each of the Trademarks for a total award of $4,000,000, Epson believes a $1,000,000 total award will serve the goals of compensating Epson, punishing Defendant, and deterring others from similar misconduct.[8] *Malletier*, 648 F. Supp. 2d at 504-05 ("where, as here, a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others"); *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458, 2010 U.S. Dist. LEXIS 5831, at *9 (January 20, 2010) (awarding damages for infringement of fifteen types of goods for a total of $13.5 million).

Defendant's conduct in this case is egregious. As explained in the complaint, Defendant is taking refurbished Epson product, removing the "Refurbished" label from the box, and either literally covering the scarred box with a fake "Epson" sticker or using a new box altogether in

---

[7] To be clear, Defendant likely sold multiple Epson products through each of the individual Amazon.com listings.

[8] While also entitled to attorneys' fees and costs, given Defendant's default and that it is unlikely that any money will ever be recovered by Epson, Epson does not wish to incur the cost, or burden the Court, with a petition for attorneys' fees and costs. Therefore, Epson does not seek its costs or attorneys' fees associated with this matter.

order to hide its nefarious scheme. This alone warrants a strong award for deterrence reasons. Moreover, given the recent increased focus on e-commerce in general due to the Covid-19 pandemic, Epson believes that the deterrence piece should be given the greatest weight by the Court. While the amount of the award is important to compensate Epson for its damages, Epson is unlikely to collect any money from the Defendant. However, a $2,000,000 judgment is something that Epson can use to deter other similar wrongdoers in its effort to protect the consuming public from similar misconduct as well as protect Epson's brand name. It is Epson's belief that for deterrence purposes, a $2,000,000 judgment is far more valuable than a six-figure judgment. Accordingly, a $2,000,000 award would be legally sound, justified by the harm suffered by Epson and particularly useful for deterrence purposes in order to protect the consuming public from similar misconduct. *See Tile, Inc. vs. Computron Sys. Int'l*, E.D.N.Y., No. 20-CV-2297 (BMC), 2020 WL 4452058 at *2 (Aug. 3, 2020) (awarding $1,000,000 in statutory damages after default due to, *inter alia*, increased focus on e-commerce and for deterrence purposes).

V. **CONCLUSION**

WHEREFORE, Epson prays for judgment in its favor and against Defendant J&R Mega Store, providing the following relief:

A. Finding that, (i) as to Count I, Defendant's unauthorized sale of Epson Products constitutes unfair competition, in violation of 15 U.S.C. § 1125(a); (ii) as to Count II, Defendant's unauthorized sale of Epson Products infringes on Epson's registered trademarks, in violation of 15 U.S.C. § 1114; resulting in Defendant, its officers, agents, servants, employees, attorneys, and any other persons or entities acting in concert or participation with Defendant, including but not limited to any online platform such as Amazon.com or any other website, website host, website

        administrator, domain registrar, or internet service provider, being preliminarily and permanently enjoined from:

    i. selling, or taking any steps to sell, any Epson products;

    ii. acquiring, or taking any steps to acquire, any Epson products;

    iii. engaging in any activity constituting unfair competition with Epson;

    iv. inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

B. Awarding Epson $1,000,000 in statutory damages for infringement of trademark Reg, No. 3,448,351 and $1,000,000 in statutory damages for infringement of trademark Reg. No. 3,092,025 for a total award of $2,000,000 in statutory damages; and

C. Any other relief as this Court deems just and proper.

A proposed order is attached hereto in accordance with the Court's standing order on default judgments.

                                                            Respectfully submitted,

                                                            Plaintiffs,
                                                            Seiko Epson Corporation and Epson America, Inc.,
                                                           by their attorney,

                                                           */s/ Morgan T. Nickerson*
                                                           Morgan T. Nickerson (BBO # 667290)
                                                           morgan.nickerson@klgates.com
                                                           K&L Gates LLP
                                                           State Street Financial Center
                                                           One Lincoln Street
                                                           Boston, MA 02111
                                                           (617) 261-3100

July 12, 2022                                              (617) 261-3175

## CERTIFICATE OF SERVICE

    I, Morgan T. Nickerson, hereby certify that on July 12, 2022, I caused to be served a copy of the foregoing document via Amazon.com's electronic mail service, as permitted by the Court's Order granting Plaintiff's Motion for Alternative Service.

                                                /s/ *Morgan T. Nickerson*
                                                Morgan T. Nickerson